UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CRYSTAL CLARK,

    Plaintiff,                     CIVIL ACTION NO. 09-13929

    v.                            DISTRICT JUDGE BERNARD A. FRIEDMAN

COMMISSIONER OF            MAGISTRATE JUDGE MARK A. RANDON
SOCIAL SECURITY,

    Defendant.
                                    /

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

**I.     PROCEDURAL HISTORY**

    *A.*     *Proceedings in this Court*

On October 5, 2009, Plaintiff filed the instant suit seeking judicial review of the Commissioner's decision disallowing benefits (Dkt. No. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), this matter was referred to the undersigned for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of Supplemental Security Income benefits (Dkt. No. 3). This matter is currently before the Court on cross-motions for summary judgment (Dkt. Nos. 10, 11). Plaintiff filed a reply brief on March 31, 2010 (Dkt. 12).

    *B.*     *Administrative Proceedings*

Plaintiff filed the instant claims on November 7, 2006, alleging that she became unable to work on June 22, 1987 (Tr. 96-98). Plaintiff's claim was initially granted by the Commissioner on February 1, 2006, but then was later denied for reasons that are unclear from the file (Tr. 47-

55). Plaintiff requested a hearing and, on September 18, 2008, Plaintiff appeared with a non-attorney representative before Administrative Law Judge (ALJ) William C. Thompson, Jr., who considered the case *de novo*. At the outset of the hearing, Plaintiff's representative made a motion to obtain a paper file relating to Plaintiff's prior collection of disability benefits; Plaintiff argued that a review of this prior file would help clarify the medical condition(s) which supported the initial finding of disability (Tr. 197-198). At the hearing, the ALJ granted Plaintiff's motion and then proceeded to hold the hearing (Tr. 32).

In a decision dated December 31, 2008, the ALJ found that Plaintiff was not disabled (Tr. 15-25). Plaintiff requested a review of this decision on January 27, 2009 (Tr. 13-14). The ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits[1] (14E, Tr. 201-203), the Appeals Council denied Plaintiff's request for further review (Tr. 8-12). *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

In light of the entire record in this case, I find that the Commissioner's determination is not supported by substantial evidence. Accordingly, it is **RECOMMENDED** that Plaintiff's motion for summary judgment be **GRANTED**, that Defendant's motion for summary judgment be **DENIED**, and that this matter be **REMANDED** for a new hearing, consistent with the discussion below.

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the Court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

## II. STATEMENT OF FACTS

### A. *ALJ Findings*

Plaintiff was 19 years old at the time of the most recent administrative hearing (Tr. 23). The ALJ applied the five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since October 27, 2006 (Tr. 20). At step two, the ALJ found that Plaintiff had the following "severe" impairments: bipolar disorder, borderline intellectual functioning and history of learning disorder. *Id.* At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. *Id.* Between steps three and four, the ALJ found that Plaintiff had the Residual Functional Capacity (RFC) to perform "a full range of work at all exertional levels but with the following non-exertional limitations: [Plaintiff] can do unskilled work only with restricted contact with the public and co-workers" (Tr. 21). At step four, the ALJ found that Plaintiff did not have any past relevant work (Tr. 23). At step five, the ALJ denied Plaintiff benefits, as the ALJ found that Plaintiff could perform a significant number of jobs available in the national economy, such as hand packager (3,000 jobs), laundry worker (1,300 jobs) and assembler (4,500 jobs) (Tr. 24).

### B. *Administrative Record*

#### 1. **Plaintiff's Testimony and Statements**

Plaintiff was seven when she was first placed into foster care, after the State found her mother unfit to be a parent (Tr. 238). Plaintiff has only met her father once and has no relationship with him (Tr. 237-8). Plaintiff struggled in school, and eventually was placed in special education with an Emotionally Impaired (EI) certification, but she dropped out of high school in her sophomore year (Tr. 32, 35-36, 220). When Plaintiff turned seventeen, she began

traveling the country meeting and staying with people she met on the internet (Tr. 348). In 2006, Plaintiff married a man many years old then her, who has a son almost Plaintiff's age; however, she and her husband separated after a few months. *Id.*

Plaintiff testified at the hearing that she was unable to work due to anger and the inability to "understand a lot of things" (Tr. 33). Plaintiff testified that she was not receiving treatment because she had no transportation to appointments (Tr. 37-38). She stated that she had difficulty controlling her temper, had abnormal sleep patterns and often became "lost and confused" (Tr. 38-39). Plaintiff testified that she worked at McDonald's for a week or two operating the cash register, but quit when the job became too overwhelming (Tr. 33).

## 2. Medical Evidence

In November 2002, when Plaintiff was 15 years old, social worker James Barlass interviewed Plaintiff and prepared a report for the special education department at Plaintiff's school (Tr. 333-34). Mr. Barlass noted that Plaintiff had an unstable home life and had recently been placed in Children's Home of Detroit (CHD), but was back with her mother as of the date of the report (Tr. 333). Mr. Barlass noted that Plaintiff had problems in the school environment and had no friends (Tr. 333). Plaintiff stated to Mr. Barlass that she had attempted suicide at least twice in the prior year and had been admitted to a psychiatric facility, but reported that her mood improved and her suicidal thoughts ceased after she was hospitalized and began taking medication (Tr. 333). Dr. Barlass opined that Plaintiff's problems were primarily in the affective domain and that they were not the result of intellectual, sensory, or health factors (Tr. 334).

Two days later, an educational specialist at Plaintiff's school administered a battery of tests and prepared a report (Tr. 307-08). On testing, Plaintiff performed below grade level in

math, reading, and spelling, but achieved IQ scores indicating average cognitive functioning (Tr. 308). The next week, Plaintiff's mother and faculty at Plaintiff's school met to develop an Individualized Education Program (IEP) (Tr. 335-45). A report describing the results of the meeting stated that Plaintiff was below average in reading, math, and writing (Tr. 337).

In January 2003, Plaintiff's mother and faculty at Plaintiff's school, met and drafted an IEP Team Report (Tr. 315-318). The report indicated that Plaintiff was eligible for special education programs due to emotional impairment (Tr. 316). Another IEP report was created five months later, which stated that Plaintiff had good verbal skills and could produce quality work when motivated (Tr. 327). It stated that Plaintiff had low-average to average cognitive ability, but was deficient in her scholastic abilities and had difficulty interacting with her peers and authority (Tr. 328).

Plaintiff's mother and the faculty at Plaintiff's school met again in May 2004 and drafted an IEP report (Tr. 211-15). The report noted that Plaintiff performed below grade level in all academic areas and lacked motivation (Tr. 212). It stated that Plaintiff displayed poor anger management, related poorly to authority and peers and displayed mood swings and inappropriate speech (Tr. 212). It further stated that Plaintiff's behaviors had improved in all areas over the last year and that she had made significant progress in mood stability and anger management (Tr. 212).

In May 2006, Plaintiff was admitted to Circle of Life Psychiatric Hospital (Circle of Life) due to suicidal ideation (Tr. 232). Dr. Kotamraju performed an initial evaluation and authored a report (Tr. 232-33). Plaintiff reported that she had recently gotten married, but was living with her mother (Tr. 232). She stated that she was previously on medications for her conditions, but had stopped taking them a few years ago (Tr. 232). Plaintiff reported that she had been admitted

to a psychiatric hospital four years ago (Tr. 232). Plaintiff denied any current psychiatric symptoms, but Dr. Kotamraju noted that she had a history of mood swings, poor impulse control with behavior problems, and smashing property (Tr. 232). Plaintiff displayed a labile, inappropriate, and elated affect and poor insight and judgment (Tr. 233). Plaintiff was admitted for treatment with psychotherapy and medication (Tr. 233). Plaintiff was discharged three days later, at which time a social worker noted that Plaintiff no longer had suicidal ideation and was capable of performing activities of daily living (Tr. 227). Plaintiff was instructed to pursue outpatient treatment (Tr. 227).

On January 26, 2007, Dr. Thomas Horner, a psychologist, examined Plaintiff for the State Disability Determination Service (DDS) and authored a report (Tr. 236-44). Dr. Horner stated that Plaintiff had an unstable home life growing up and variously lived with her mother, grandmother, or in foster care (Tr. 238). Dr. Horner noted that Plaintiff was referred to CHD by a court on petition by her mother because she misbehaved at school, destroyed things at home, and got into fights (Tr. 237). Plaintiff reported working at McDonald's for two weeks, but left the job when the man she was living with was arrested, and she lost her possessions which were in his apartment (Tr. 238). Plaintiff stated that she preferred to be alone and spent her time watching television, listening to music, writing in a journal, and drawing (Tr. 239). Dr. Horner observed that Plaintiff had chronically low self-esteem, anxiety, and impaired motivation, but possessed adequate tolerance for change (Tr. 240). He noted that Plaintiff was depressed, anxious, and intermittently apathetic (Tr. 241).

After testing, Dr. Horner opined that Plaintiff had grossly normal intelligence, articulate speech, a dysphoric mood, focused and sustained attention and concentration, and language ability consistent with her level of intelligence (Tr. 243). Dr. Horner diagnosed intermittent

explosive disorder with recurring depression, a probable history of a learning disorder and reactive attachment disorder, and a personality disorder (Tr. 243). Dr. Horner assigned a Global Assessment of Functioning(GAF)[2] score of 50-55 (Tr. 243).

On February 22, 2007, Dr. Rom Kriauciunas reviewed Plaintiff's records for the State DDS and assessed her mental abilities (Tr. 247). Dr. Kriauciunas opined that Plaintiff had intermittent explosive disorder with depression and as a result was mildly limited in activities of daily living and moderately limited in maintaining social functioning and in maintaining concentration, persistence, or pace (Tr. 254, 257). Dr. Kriauciunas opined that Plaintiff was moderately limited in her ability to remember and carry out detailed instructions and maintain attention and concentration for extended periods (Tr. 263). Dr. Kriauciunas also stated that Plaintiff was moderately limited in her ability to interact with the general public, to maintain socially appropriate behavior, and to respond to changes at work (Tr. 263). He opined that Plaintiff could perform simple, unskilled work on a sustained basis (Tr. 263).

On October 4, 2008, Plaintiff presented to Dr. Edward Czarnecki, a psychologist, for an evaluation on referral from her attorney (Tr. 347-52). Plaintiff reported that she had a difficult childhood with a history of traumatic separation, neglect, impulsivity, maladjustment, and emotional instability (Tr. 347). Plaintiff stated that she had been married, but that she was now divorced (Tr. 348). Plaintiff reported that, after she left her husband, she became depressed and

---

[2] The GAF score is "a subjective determination that represents the clinician's judgment of the individual's overall level of functioning. It ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). A GAF score of 31-40 indicates some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas such as work or school, family relations, judgment, thinking or mood. A GAF of 41 to 50 means that the patient has serious symptoms . . . OR any serious impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job). A GAF rating of 51 to 60 signals the existence of moderate difficulty in social or occupational functioning." *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 276 (6th Cir. 2009).

was admitted to Circle of Life (Tr. 348). Plaintiff reported no current mental health treatment (Tr. 348). Plaintiff stated that she had worked at McDonald's, but was fired after a confrontation with a customer (Tr. 348). Dr. Czarnecki observed that Plaintiff presented as suspicious, guarded, distant, aloof, and distracted (Tr. 349). He noted that Plaintiff appeared fatigued and indifferent, communicated poorly, and exhibited poor concentration, attention, and focus (Tr. 349). Plaintiff had poor insight and displayed a flat, very constricted affect with occasional irritability (Tr. 349). Plaintiff stated that she had intense free-floating anxiety and mood swings (Tr. 349). Dr. Czarnecki administered IQ tests which yielded a verbal score of 74, a performance score of 87, and a full scale score of 78 (Tr. 350). Plaintiff's math and reading scores were at a third-grade level and her spelling was at a fifth-grade level (Tr. 350). Dr. Czarnecki opined that Plaintiff had a moderate learning disability that was magnified by her personality problems (Tr. 350). Dr. Czarnecki opined that Plaintiff had a severe borderline personality disorder and a borderline intellectual capacity (Tr. 350). Dr. Czarnecki further opined that Plaintiff could not function in relationships with others and had marginal mental capacity to learn and perform simple tasks (Tr. 351). Dr. Czarnecki noted that it would be important to know the circumstances of her past disability determination to completely understand Plaintiff's mental impairment (Tr. 351). Dr. Czarnecki assigned Plaintiff a GAF score of 40 (Tr. 352).

   **3.**  **Vocational Expert**

 The ALJ asked the vocational expert (VE) a hypothetical question regarding what jobs could be performed by a person with Plaintiff's age, education, and work experience who was limited to work involving simple instructions and restricted contact with the public and coworkers, meaning that the person could not work as part of a team or as part of a cooperative process (Tr. 40). The VE testified that such a person could perform work as hand packager,

laundry worker, or light assembler with a total of 8,800 jobs existing in the state of Michigan (Tr. 40).

### C. Plaintiff's Claims of Error

Plaintiff's overarching argument on appeal is that the ALJ's decision is not based upon substantial evidence and should not be affirmed, but reversed or remanded. Specifically, Plaintiff advances the following arguments: (1) the ALJ failed to fully develop the evidence of record by failing to obtain and consider Plaintiff's prior disability file; (2) the ALJ improperly rejected the findings of Dr. Czarnecki; (3) the ALJ made an erroneous, and vague, credibility finding; and (4) the ALJ's hypothetical question was incomplete, leading to an erroneous step five determination.

## III. DISCUSSION

### A. Standard of Review

In enacting the Social Security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *See Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *See Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the

Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may...consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more

than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *See Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *See Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

### B. *Governing Law*

The "[c]laimant bears the burden of proving her entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefit programs under the Act,

including the Disability Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq.*) and the Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381 *et seq.*). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, *Federal Disability Law and Practice* § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments, that "significantly limits...physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *See Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given her RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

### C. *Analysis and Conclusions*

#### 1. **Plaintiff's Prior Disability Claim File**

Plaintiff had a prior disability claim that resulted in an award of benefits (Tr. 197). The electronic file referenced by the ALJ during the hearing did not contain information concerning Plaintiff's prior claim, however, there apparently is a paper file related to Plaintiff's prior claim. *Id.* At the outset of the hearing before the ALJ, Plaintiff's representative brought a motion to compel the production of Plaintiff's prior paper disability file; the ALJ granted Plaintiff's motion and agreed to retrieve the prior claim file and produce it to Plaintiff's representative (Tr. 31-32). Plaintiff's psychologist – Dr. Czarnecki – noted in his written report that a review of the prior

-13-

case is important in a number of respects to the issues before the ALJ (Tr. 351). Specifically, Dr. Czarnecki indicated that, due to Plaintiff's disabling level of emotional impairment since childhood, it would be important to know the circumstances of both the determination of childhood disability as well as the termination of those benefits to fully understand Plaintiff's mental impairment. *Id.* Dr. Czarnecki further opined that a full review of the past records, including any past hospitalizations, would further illustrate the depth, scope and duration of Plaintiff's psychological and emotional problems. *Id.*

Despite granting Plaintiff's motion to compel production of the prior paper file, nowhere in the ALJ's written decision does he address this issue nor was the prior claim ever produced to Plaintiff's representatives. Quite simply, it was error for the ALJ to "grant" Plaintiff's motion to compel production of these important records, and then fail to follow through and produce those records. Therefore, the undersigned finds that the ALJ failed to fully develop the record in this case and remand is appropriate so that, at a minimum, Plaintiff's prior claim file can be located – produced to Plaintiff's representatives – and so that the information contained in that file can be considered by an ALJ at a new hearing.

### 2. The ALJ Improperly Rejected Dr. Czarnecki's Findings

Plaintiff next argues that the ALJ's RFC finding is not supported by substantial evidence as he improperly rejected the findings of Dr. Czarnecki (Tr. 23). Plaintiff's argument is well-taken.

In his 2008 Psychological evaluation, Dr. Czarnecki administered the Wechsler Adult Intelligence Scale-III as well as a clinical interview and mental status exam (Tr. 347-52). Among other findings, Dr. Czarnecki found that Plaintiff had a GAF score of 40 (showing some impairment in reality testing or communication or major impairment in several areas, such as

work or school); that Plaintiff's reading and arithmetic were at third-grade levels; and concluded that Plaintiff did not retain the mental capacity or social functioning to sustain an independent routine of even simple tasks on a consistent or sustained basis (Tr. 350-52). The ALJ "gave this opinion little weight," concluding that Dr. Czarnecki's report was "internally inconsistent" and inconsistent with the well-reasoned conclusions of a prior consultative examiner (Dr. Horner) (Tr. 23).

As to the ALJ's conclusion that Dr. Czarnecki's report is internally inconsistent, the ALJ found that "although the examiner characterized [Plaintiff's] learning disability as 'severe,' he also noted that testing revealed only 'moderate' learning disability in verbal functioning" (Tr. 23). In making this finding, however, the ALJ misstated Dr. Czarnecki's report. While Dr. Czarnecki diagnosed Plaintiff with a severe *personality* disorder, his summary clearly states that Plaintiff has a "moderate learning disability," not "severe" as the ALJ alleged (Tr. 23, 350, 352). Therefore, despite the ALJ's contentions, Dr. Czarnecki's report is not internally inconsistent and the ALJ should not have rejected Dr. Czarnecki's report outright, on these grounds.

Second, the ALJ gives Dr. Czarnecki little weight as it is inconsistent with the "well-reasoned report of the C/E (consultative examiner) C/E" (Tr. 23). However, Plaintiff notes that the C/E report that the ALJ views as superior to Dr. Czarnecki's report failed to even perform an IQ test, merely concluding that the Plaintiff's intelligence was "grossly normal," unlike Dr. Czarnecki's report, which administered the Wechsler Adult Intelligence Scale-III IQ test (Tr. 243, 347-52). Plaintiff also avers that the ALJ failed to state his reasoning for how the C/E is somehow superior to Dr. Czarnecki's report. Plaintiff is correct – the ALJ did not adequately explain his reasons for preferring the C/E's report over Dr. Czarnecki's report. *See Lowery v. Comm'r*, 55 Fed. Appx. 333, 339 (6th Cir. 2003) citing *Diaz v. Chater,* 55 F.3d 300, 306 (7th

Cir. 1995) (An ALJ may not select and discuss only that evidence that favors his ultimate conclusion, but must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning).

Furthermore, Plaintiff correctly notes that the ALJ appeared to ignore the significance of Plaintiff's GAF score of 20, which can demonstrate a serious impairment (Tr. 232). A GAF of 20 shows some danger of hurting self or others or occasionally fails to maintain minimal personal hygiene or gross impairment in communication, yet the ALJ does not factor in Plaintiff's GAF of 20 nor Dr. Czarnecki's finding of a GAF of 40 (which shows major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood). Although the ALJ was not required to reference Plaintiff's GAF, a GAF score may be of considerable help for an ALJ determining a Plaintiff's mental capacities. *See Gardner v. Comm'r Soc. Sec.,* 2008 U.S. Dist. LEXIS 15428 (E.D. Mich. 2008).

In sum, after review of the record, I conclude that the decision of the ALJ did not give appropriate weight to Dr. Czarnecki's opinion and/or did not adequately explain why he departed from the diagnoses of Dr. Czarnecki. Simply put, the ALJ did not set forth "good reasons" for discounting the opinion of Dr. Czarnecki. Therefore, a remand is required so that the ALJ can also explain more fully why he rejected the opinion of Dr. Czarnecki.

### 3. The ALJ Made an Erroneous Credibility Finding

Plaintiff next argues that the ALJ failed to make a proper credibility finding, ignoring SSR 96-7p, stating that while Plaintiff's impairments could be reasonably expected to produce the type of symptoms alleged, Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible. . ." (Tr. 22).

It is for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of Plaintiff. *See Walters v. Comm'r*, 127 F.3d 525, 531 (6th Cir. 1997). However, the ALJ is not free to make credibility determinations based solely upon an "intangible or intuitive notion about an individual's credibility." *Rogers v. Comm'r*, 486 F.3d 234, 247 (6th Cir. 2007) quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, at * 4. Rather, such determinations must find support in the record. *Id.* Social Security Ruling 96-7p also requires the ALJ explain his credibility determinations in his decision such that it "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." In other words, blanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence.

In the present case, the ALJ alleges that Plaintiff provided conflicting information regarding past work between the hearing, where she testified that she quit her job at McDonalds because it felt overwhelming, and the disability report, where she stated she stopped work because she moved out of town (Tr. 22). Plaintiff persuasively argues in response that the ALJ quotes the disability report out of context. In addition to stating that she moved out of state, Plaintiff also stated that her illness caused her to walk out of work when the manager yelled at her (Tr. 106). Past work is factual – prior earnings are in the record – and the ALJ makes no mention of Plaintiff's alleged motive to intentionally misstate her work record. Moreover, in Plaintiff's SSA Functional Report dated December 5, 2006, Plaintiff wrote that she left her job because she "felt overwhelmed. . ." (Tr. 146). This is consistent with the testimony given at the hearing (Tr. 33).

In addition, while the ALJ believes that Plaintiff had a "generally unpersuasive appearance and demeanor while testifying," he failed to specify what actions or observations of the Plaintiff led him to this conclusion. This determination is likewise in error, as an ALJ's decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. Accordingly, the undersigned finds that the ALJ's credibility determination is flawed, and a new hearing should be held.

## III. RECOMMENDATION

Based on the foregoing, it is **RECOMMENDED** that Plaintiff's motion for summary judgment be **GRANTED**, Defendant's motion for summary judgment be **DENIED**, and this matter be **REMANDED** for a new hearing.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

                                                 s/Mark A. Randon
                                                 MARK A. RANDON
                                                 UNITED STATES MAGISTRATE JUDGE

Dated: October 7, 2010

*Certificate of Service*

*I hereby certify that a copy of the foregoing document was served on the parties of record on this date, October 7, 2010, by electronic and/or first class U.S. mail.*

                                               *s/Melody R. Miles*
                                               *Case Manager to Magistrate Judge Mark A. Randon*
                                               *(313) 234-5542*